106.    In or about December 2018, Defendant LaPLANTE requested that Plaintiff's annual review be redone despite it already being reviewed, and signed by Sgt. Curtis Davis. Defendant LaPLANTE repeatedly pressured Sgt. Davis to change his favorable evaluation of Plaintiff and attempted to force Sgt. Davis to write a negative annual review for Plaintiff. Plaintiff protested this further attempt to harm her.   However, the Human Resources Department   said Plaintiff's performance evaluation could not be changed because it had already been submitted.

107.    On or about February 11, 2019, Plaintiff was terminated while having only two weeks left  remaining on her probationary period. Plaintiff was purportedly terminated for taking four (4) sick days, which were part of her benefits, despite the fact that Plaintiff provided documentation for every sick day she took.

108.    Plaintiff had no choice but to take three (3) sick days due to her son becoming ill and Plaintiff having to make an emergency last minute medical appointment for him. Plaintiff's  son has heart issues, and on one occasion Plaintiff was told by a doctor that her son's heart was not working properly and that he needed to be seen by a heart specialist. Plaintiff  had no other choice but to take a sick day, as her son's health and life were at stake. Upon information and belief, this treatment was different from the treatment afforded to other non-Asian and non-Asian female employees.

109.    Additionally, Plaintiff contracted the flu virus and subsequently took two (2) sick days, because her condition deteriorated and rendered her both contagious and  unable to work on said days. This fact was documented. The last sick day Plaintiff took was in observation of a religious holiday,  specifically for the Indian holiday, Diwali. Plaintiff informed Defendants well in advance of her need to take off to observe the religious holiday and use one of her "sick" days. Further, Plaintiff provided documentation supporting her absence due to contracting the flu, which

26

was the last day she was absent during her employment at Defendant NHCC.

110.    However, Caucasian Public Safety officers were not penalized in the manner Defendant LaPlante penalized Plaintiff. For example, Plaintiff's former co-worker, James Pateres (hereinafter "Mr. Pateres"), a Caucasian Public Safety Officer,   was promoted to full-time status on the same date as Plaintiff and was on probation at the time Plaintiff was wrongfully terminated. Mr. Pateres took more days off than Plaintiff yet was not terminated. Instead, Mr. Pateres was allowed to continue his probationary period and only received a warning for the numerous days he "called-off."  Further, upon information and belief, on at least one occasion, Mr. Pateres turned off the medical gas supply in the E.R. without authorization, which jeopardized the life of patients being treated. Nevertheless, Mr. Pateres was still not terminated.

111.    In Plaintiff's termination documents, Defendant LaPLANTE claims Plaintiff did not meet the Department's performance standards. However, annual reviews, which were signed by Defendant LaPLANTE, demonstrate otherwise, and in fact, showed that Plaintiff was well-qualified for the position and a good worker.

112.    Upon information and belief, despite numerous complaints having been filed against Defendant LaPLANTE, NHCC has taken little to no action to remedy his misconduct, discrimination and retaliation.

113.    As a result of these unfair and unlawful practices, involving race, national origin, sex/gender discrimination, Plaintiff has suffered emotional injury and was forced to see a therapist and take medication due to her being subjected to acts of discrimination, retaliation, all of which made Plaintiff's work life a living hell, and a hostile and toxic work environment.

114.     As a result of these unfair and unlawful practices, involving race, national origin, sex/gender discrimination, unequal pay, denial of promotion, denial of benefits, unfair promotions and retaliation have caused Plaintiff a significant loss of wages, title, benefits, value of retirement, standard of living, esteem and reputation.

115.     Furthermore, Plaintiff Forbes has suffered economic detriment, emotional distress, embarrassment, humiliation, depression, disgrace and other injuries, and still has not been able to obtain employment due to the manner in which she was terminated from her position at NHCC.

### AS AND FOR A COUNT ONE
### TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

116.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 115 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

117.     Defendant NHCC, through their agents and employees, discriminated against the Plaintiff in her employment based on Plaintiff's race, color, national origin and sex/gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

118.     As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income. Plaintiff suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

119.     As a direct result of aforementioned acts, Plaintiff has been deprived of her rights and deprived of her freedoms. Plaintiff has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, harassment and discrimination.

120.    Plaintiff has been subjected to humiliation, ignominy, loss of title/status, untimely removal from her position, and removal from her assignment. As a result, Plaintiff has experienced a diminution in her quality of life.

121.    Plaintiff was refused status, promotion, accommodations, benefits, resources and trust awarded to other employees who were similarly situated, excepting the fact that they are not Asian, Indian, and many are not women.

122.    Were Plaintiff a White male, rather than an Asian woman, she would not have been subjected to the adverse employment actions, denial of promotion, wrongful write-ups and reprimands, retaliation, wrongful termination, and subjected to the intense abuse and humiliation that continued throughout Plaintiff's tenure at NHCC.

123.    Plaintiff has been subjected to retaliation for speaking against and opposing her wrongful treatment which was contrary to her rights under Title VII.

124.    Further, once Plaintiff protested such unequal and unlawful treatment, Defendant LaPLANTE, Defendant ACQUAVELLA, and NHCC's agents retaliated against her by denying Plaintiff the benefit of options, opportunities, and accommodations offered to all NHCC employees; denying Plaintiff a promotion; encouraging Plaintiff's Supervisors to make false allegations against Plaintiff in order to wrongfully terminate Plaintiff; verbally abusing and yelling at Plaintiff; ignoring Plaintiff's justifiable complaints; creating a hostile work environment for Plaintiff; using derogatory language to refer to Plaintiff; and terminating her twice without justification or proper process, and other wrongful actions.

125.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status,

loss of opportunities, distress, humiliation, embarrassment, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint. Further, Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/injuries due to NHCC's unlawful discrimination and retaliation.

126. That by reason of the foregoing, Plaintiff Forbes is now suffering and will continue to suffer irreparable injury and monetary damages, has been subjected to economic losses and distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages against the individuals, costs and attorney's fees.

## AS AND FOR COUNT TWO
## 42 U.S.C. § 1981

127. Plaintiff repeats and reiterates each allegation set forth in paragraphs 1 through 126 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

128. Defendant NHCC, through its agent/employee, Defendant LaPLANTE, and Defendant ACQUAVELLA discriminated against Plaintiff in her employment based on Plaintiff's race and/or color, and wrongfully terminated and retaliated against Plaintiff based on her race and/or color, in violation of, inter alia, 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406). The creation of a hostile work environment and the ongoing wrongful actions taken against Plaintiff were related to her race and color and her opposing the discriminatory treatment to which she was subjected, which was contrary to 42 U.S.C. §1981.

129.    The above described discriminatory pattern and practice of discrimination to which Plaintiff was subjected to by DEFENDANTS was based on Plaintiff's race and color.

130.    As a direct result of the aforementioned acts, Plaintiff has been deprived of equal treatment, deprived of her right to contract, deprived of her freedoms and economically injured. Plaintiff FORBES has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

131.    As a direct and proximate result of said acts by Defendants NHCC, LaPLANTE, and ACQUAVELLA, Plaintiff has suffered loss of peace of mind, loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

132.    Because of Plaintiff's color and race she has been subjected to abuse and mistreatment, as detailed above, and has been treated differently than non-Indian-Asian-female individuals.

133.    Defendant LaPLANTE harassed and retaliated against Plaintiff, without valid justification or reason, throughout the majority Plaintiff's employment at Defendant NHCC. Defendant LaPLANTE wrote-up, harassed, and reported Plaintiff to H.R. several times a week without reason or justification. Defendant LaPLANTE's hostility toward Plaintiff was ongoing and overt. Defendant LaPLANTE would also frequently stare at Plaintiff for long periods of time when she was at her post. Defendant LaPLANTE also had a pattern of assigning Plaintiff to posts where she could be viewed on the surveillance system "to make sure she was doing her job," while in fact doing so was a part of Defendant LaPLANTE's goal of harassing and intimidating Plaintiff.

134.    One example of Defendant LaPLANTE's targeting and harassing Plaintiff occurred when he rescinded the "last hour lunch" option she was allowed to take when she was a part-time Public Safety Officer.  Last hour lunch was an accommodation which allowed certain Public Safety Department employees to take their lunch break during their last hour, enabling them to leave one hour early once or twice a week. To create a hardship for Plaintiff,  after Plaintiff was promoted to full-time status,  Defendant LaPLANTE refused to allow Plaintiff to take last hour lunches.

135.    On, or about, October 19, 2018,  in retaliation against Plaintiff due to her relationship with her family and the internal  NHCC Human Resources  complaint her husband filed, Plaintiff was reprimanded by Defendant LaPLANTE who wrongfully accused her of  having her son on her post (SP1 3rd Fl. Waiting area). Plaintiff explained to Defendant LaPLANTE that her son was only at the hospital to visit a family member who was in labor and delivery, and had to come out to the waiting area when said pregnant family member began having contractions.

136.    Several of Plaintiff's former co-workers, including Leo Sullivan, who relieved Plaintiff, advised Defendant LaPLANTE that Plaintiff's son was never on her post. However, Defendant LaPLANTE's official, false reprimand was never rescinded. While Plaintiff did not violate this rule, even if she had, the treatment afforded to her was different than how non-Asian women employees were treated.  Defendant LaPLANTE subjected Plaintiff to differential treatment even to the extent of penalizing Plaintiff for allegedly having her  minor children present at posts. Plaintiff's former co-worker, Officer G. Sison, a Filipino Fire Safety Officer, was allowed to have his son, a minor, walk  around with him for the entirety of his 4:00 p.m. -12:00 a.m. shift.  No action was taken against him.

137.    Defendant LaPLANTE made it clear that he was going to retaliate against Plaintiff and used the above described occasion to do so.  In the past, and prior to Plaintiff's last Division of Human Rights Complaint, Plaintiff's son came to Plaintiff's place of work for about four (4) years while Plaintiff and her husband changed shifts and it was never brought up as an issue until the October 19, 2018 occasion when Defendant LaPLANTE reprimanded Plaintiff. In further support of Plaintiff's retaliation claims against Defendant LaPLANTE, is the fact that the above referenced "incident" concerning Plaintiff's son  was coincidentally reported by Ms. Iadevaia, who was referenced in the complaint Plaintiff's  husband filed on or about October 9, 2018.

138.    On or about October 19, 2018, Plaintiff was falsely accused of, and reprimanded for, allegedly mentioning her menstrual cycle in the presence of a patient in the psychiatric department. Officer James Vossler (herein "Mr. Vossler") accompanied Plaintiff to the psychiatric unit, because they were called to the unit to assist a police officer with a psychiatric patient who was having an episode.

139.    After about 45 minutes the police officer, Plaintiff, and Mr. Vossler were able to calm the patient down. Some time after this, Plaintiff, who at the time was on her period, asked a female supervisor to use the restroom. Additionally, Plaintiff has a documented medical issue that causes her to have severe pain, and blood loss while menstruating. Plaintiff did not mention her period in front of the patient, despite Mr. Vossler's  false  accusation that she did, and that it caused the patient's episode.

140.    As a part of Defendant LaPLANTE's goal of targeting and harassing Plaintiff, Defendant LaPLANTE forced Plaintiff's co-worker, Jamie Lucas (herein "Mr. Lucas"), to sign a false statement against Plaintiff alleging that she made inappropriate remarks about her menstrual

33

cycle in the presence of a patient.  Plaintiff's co-worker, Mr. Lucas, who was on probation, sought to correct the record, and submit an accurate statement, but was told by a Union representative  not to change his statement and out of fear did not do so. Plaintiff's former co-worker, Officer Young, can attest to the fact that Mr. Lucas wanted to correct the record, but was advised against doing so by a Union representative.  Further, the police officer who purportedly witnessed Plaintiff make offensive remarks never made a statement against Plaintiff because he did not think what was being done was right and he refused to participate.

141.   In or about the month of October 2018, as told to Plaintiff by Human Resources Representative, Denise Thomspon, Plaintiff's coworker, Mr. Vossler, a Caucasian man, reported that Plaintiff makes him want to throw up and that whenever Plaintiff goes on calls people get hurt. Ironically, no officer in Plaintiff's  department has had more patient altercations than Mr. Vossler. Soon after Mr. Vossler made the offensive remarks about Plaintiff to Human Resources, Mr. Vossler, who also rents an apartment from Defendant LaPLANTE, instead of being disciplined  for his offensive comments, Mr. Vossler was promoted to the position of Vehicle Maintenance Officer.

142.   On or about October 2018, Plaintiff was again, without reason or justification, taken to Human Resources  Representative  Denise Thompson, and accused of disrespecting a co-worker. Plaintiff was wrongfully accused of disrespecting her former co-worker, Caleb White, because she called him by his last name without using his tittle Sergeant. However, the general practice of the Public Safety  Department was to refer to other officers using their last names. Despite, this commonly followed practice, Plaintiff was reported, and accused of using racist language by calling Mr. White, "White." Plaintiffs' former co-workers also accused her of  being racist against White people because she married a Black man.

143.   Later that same month in October 2018, Defendant LaPLANTE aggressively questioned and intimidated Plaintiff for discussing with coworkers the details of the reprimand he issued against Plaintiff. Plaintiff informed Defendant LaPLANTE that she discussed the issue with her husband, and that to her knowledge, there was no rule against discussing reprimand details with a coworker. Plaintiff recorded this conversation because of the abusive, aggressive, intimidating manner and tone Defendant used in communicating with Plaintiff.

144.   In or about October 2018, Plaintiff became aware of, and listened to, an audio recording Supervising Officer Rhea Davy made in which she stated that Defendant LaPLANTE, NHCC's Public Safety Department Captain, repeatedly pressured her to write Plaintiff up for frivolous reasons, including for simply requesting training for an assignment Plaintiff had never performed before.

145.   After Plaintiff received the promotion, LaPLANTE began trying to force the supervisors to write her up for numerous issues which were false or frivolous. This behavior caused several of the supervisors to rebuff his directives, because they were uncomfortable participating in Defendant LaPLANTE's crusade to discriminate, retaliate against, and try to fire Plaintiff.

146.   Defendant LaPLANTE, not only made false allegations against Plaintiff in the hope of causing Plaintiff's termination, he also harassed Plaintiff, denied Plaintiff the use of accommodations and benefits other Public Safety Department employees were afforded, and used derogatory and offensive language to refer to Plaintiff.

147.   On or about November 2018, Plaintiff was informed by Zorawar "Prince" Singh that Defendant LaPLANTE repeatedly referred to Plaintiff as an "Indian bitch." Mr. Singh was the only other Indian employee at Defendant NHCC's Public Safety Department, and one of only three

35

Asian individuals employed by the Department. Mr. Singh was also subjected to offensive conduct and remarks from Department employees and Supervisors. For example, Mr. Singh's  work Identification Card listed his position as "terrorist," demonstrating the  offensive and racist comments and environment Asian employees in the Public Safety Department are subjected to.

148.    In or about December 2018, Defendant LaPLANTE requested that Plaintiff's annual review be redone despite it already being reviewed, and signed by Sgt. Curtis Davis. Defendant LaPLANTE repeatedly pressured Sgt. Davis to change his favorable evaluation of Plaintiff and attempted to force Sgt. Davis to write a negative annual review for Plaintiff. Plaintiff protested this further attempt to harm her.  However, the Human Resources Department  said Plaintiff's performance evaluation could not be changed because it had already been submitted.

149.     On or about February 11, 2019, Plaintiff was terminated while having only two weeks left  remaining on her probationary period. Plaintiff was purportedly terminated for taking four (4) sick days, which were part of her benefits, despite the fact that Plaintiff provided documentation for every sick day she took.

150.    Plaintiff had no choice but to take three (3) sick days due to her son becoming ill and Plaintiff having to make an emergency last minute medical appointment for him. Plaintiff's son has heart issues, and on one occasion Plaintiff was told by a doctor that her son's heart was not working properly and that he needed to be seen by a heart specialist. Plaintiff had no other choice but to take a sick day, as her son's health and life were at stake. Upon information and belief, this treatment was different from the treatment afforded to other non-Asian and non-Asian female employees.

151.     Additionally, Plaintiff contracted the flu virus and subsequently took two (2) sick days, because her condition deteriorated and rendered her both contagious and  unable to work on

36

said days. This fact was documented. The last sick day Plaintiff took was in observation of a religious holiday, specifically for the Indian holiday, Diwali. Plaintiff informed Defendants well in advance of her need to take off to observe the religious holiday and use one of her "sick" days. Further, Plaintiff provided documentation supporting her absence due to contracting the flu, which was the last day she was absent during her employment at Defendant NHCC.

152.    However, Caucasian Public Safety officers were not penalized in the manner Defendant LaPlante penalized Plaintiff. For example, Plaintiff's former co-worker, James Pateres (hereinafter "Mr. Pateres"), a Caucasian Public Safety Officer,  was promoted to full-time status on the same date as Plaintiff and was on probation at the time Plaintiff was wrongfully terminated. Mr. Pateres took more days off than Plaintiff yet was not terminated. Instead, Mr. Pateres was allowed to continue his probationary period and only received a warning for the numerous days he "called-off." Further, upon information and belief, on at least one occasion, Mr. Pateres turned off the medical gas supply in the E.R. without authorization, which jeopardized the life of patients being treated. Nevertheless, Mr. Pateres was still not terminated.

153.    Defendant LaPLANTE and Defendant ACQUAVELLA subjected Plaintiff FORBES to harassment, humiliation, a hostile work environment, and embarrassment due to her status as an Asian- American woman.  Defendant LaPLANTE harassed and retaliated against Plaintiff, and concocted false misconduct charges against Plaintiff to cause her wrongful termination. As a result, Plaintiff has experienced a diminution in her quality of life and other injuries and fear.

154.    Specifically, Defendant LaPLANTE and Defendant ACQUAVELLA, with the approval, implicit or otherwise, of Defendant NHCC, subjected Plaintiff FORBES to racial enmity, which constitutes a hostile work environment when considered in the aggregate, in violation of

Section 1981.  This hostile work environment culminated in Defendant LaPLANTE terminating

Plaintiff, without justification or valid basis, in violation of Section 1981.

155.    Defendant LaPLANTE and Defendant LaPLANTE, who both had  authority over

Plaintiff FORBES, were permitted by consent, explicit or otherwise, of Defendant NHCC to create

a hostile work environment by harassing, threatening, intentionally inflicting emotional distress, and

otherwise subjecting Plaintiff FORBES to discriminatory treatment, creating a hostile work

environment for Plaintiff FORBES.

156.    Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other

damages/ injuries due to Defendant NHCC's unlawful discrimination.

157.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of

status, loss of opportunities, loss of title, distress, humiliation, embarrassment, and damage to her

reputation as alleged in the preceding paragraphs of the within Complaint.

158.    That by reason of the foregoing, Plaintiff FORBES has been subjected to  pain,

suffering,  loss  of  self-esteem,  self-doubt,  disgrace,  public  humiliation,  embarrassment,

inconvenience, and frustration and, thus, has been damaged in excess of five million ($5,000,000.00)

dollars, as well as punitive damages against the individuals, costs, and attorney's fees.

### AS FOR A COUNT THREE
### 42 U.S.C. §1983 - FOURTEENTH AMENDMENT

159.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 158

inclusive of this Complaint, with the same force and effect as though herein fully set forth.

160.    The Defendants have engaged in actions and abuses which violate and deny Plaintiff

her  rights as provided under the Fourteenth Amendment of the United States Constitution thus

violating her Fourteenth Amendment right of equal protection and substantive due process in discriminating against Plaintiff, because of, and account of her race, national origin, gender, and color.

161.    Defendants' LaPLANTE and ACQUAVELLA' actions as state actors, infringed upon, and was violative of, Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution. Defendants' actions were intended to deprive Plaintiff of her rights and to place a chilling effect upon the exercise of such rights by Plaintiff and other persons as is their right as provided by the U.S. Constitution and exercise such rights.

162.    Plaintiff, a South Asian woman, has been treated differently from similarly situated White employees and non–Asian female employees, and Plaintiff has been abused and violated because of her race, color, national origin, and gender.

163.    Defendants' LaPLANTE and ACQUAVELLA's actions have caused Plaintiff to suffer, and have resulted in diminishing her employment, loss of promotion, and the ability to advancement in her employment.

164.    Defendants knew that they were discriminating against and violating Plaintiff's rights. Defendants conspired with one another to discriminate against Plaintiff because of her race, color, national origin, and gender. Defendants further retaliated against Plaintiff for her opposition to acts of discrimination in violation of 42 U.S.C. §1983.

165.    The Defendants took no action to prevent the wrongful actions taken against Plaintiff to discriminate against her, and cause her employment to be wrongfully terminated.

166.    Defendants acquiesced and contributed to the continuation of the conspiracy to violate Plaintiff's rights in failing to take action as to prevent and expose the discriminatory and

violative actions being taken against Plaintiff.

167.    The Defendant condoned the wrongful, discriminatory, reckless, careless and intentional acts taken as set out herein, and each had an affirmative responsibility to prevent, expose and reverse said wrongful, discriminatory, reckless, careless and intentional acts. Instead, Defendants joined in this conspiracy against Plaintiff, because of her race, gender, national origin, and color.

168.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer diminished employment, loss of income, loss of employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damage to her reputation.

169.    As a result of Defendants' acts, Plaintiff suffered  and is entitled to, damages sustained to date and continuing in excess of five million dollars ($5,000,000.00), as well as punitive damages, costs and attorney 's fees.

## AS AND FOR A COUNT FOUR
## 42 U.S.C. §1983 - MUNICIPAL VIOLATIONS

170.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 169 inclusive, of this Complaint, with the same force and effect as though herein fully set forth.

171.    Defendant NHCC, acting under color of law, and through their employees servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, in abusing the rights and discriminating against persons situated as Plaintiff is, which has deprived Plaintiff of rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. §1983.  These actions were condoned, adopted and fostered by policy makers of Defendant NHCC.

40

172.     As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

173.     As a result of Defendants acts, Plaintiff suffered, and is entitled to, damages sustained to date and continuing in excess of five million dollars ($5,000,000.00), costs and attorneys' fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

## AS FOR A COUNT FIVE
### Executive Law of New York, Art. 15  ("Human Rights Law") §§ 290 & 296

174.     Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 173 inclusive of this Complaint, with the same force and effect as through herein fully set forth.

175.     The above discriminatory practice based on race, national origin, sex, and/or gender by Defendants NHCC,  LaPLANTE, and ACQUAVELLA violates New York State Executive Law.

176.     Defendant NHCC, through its agent/employees, Defendants LaPLANTE and ACQUAVELLA, discriminated and retaliated against Plaintiff in her employment based on Plaintiff's race/color, and wrongfully terminated Plaintiff in violation of, inter alia, the New York Human Rights Law, and retaliating against her for her opposition to the discrimination to which she was being subjected in violation of this section.

177.     As a direct result of aforementioned acts, Plaintiff has been deprived of her rights, deprived of her freedoms, and economically injured. Plaintiff FORBES has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and

discrimination.

178.     Defendant   LaPLANTE  and   Defendant ACQUAVELLA subjected Plaintiff FORBES to harassment, humiliation, a hostile work environment, and embarrassment due to her status as an Asian American/Indian Woman. As a result, Plaintiff has experienced a diminution in her quality of life.

179.     Specifically, Defendant LaPLANTE and Defendant ACQUAVELLA, with the approval, implicit or otherwise, of Defendant NHCC, subjected Plaintiff FORBES to racial enmity, which constitutes a hostile work environment when considered in the aggregate, in violation of the New York Human Rights Law.  This hostile work environment DEFENDANT LaPLANTE created culminated in his wrongful termination of Plaintiff based on race, national origin, sex, gender, and because Plaintiff challenged Defendants' discriminatory and disparate treatment to which they subjected her, which constitutes a violation of the New York Human Rights Law.

180.     Defendant LaPLANTE and  Defendant ACQUAVELLA, who had immediate authority over Plaintiff, was permitted by consent, explicit or otherwise, of Defendant NHCC to create a hostile work environment by harassing, intentionally inflicting emotional distress, and otherwise subjecting Plaintiff to discriminatory treatment.

181.     Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/ injuries due to Defendant NHCC's  unlawful discrimination.

182.     As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

42

183.    That by reason of the foregoing, Plaintiff has been subjected to emotional pain, suffering, economic loss, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, frustration, irreparable injury, great expense and monetary damages, and, thus, has been damaged in excess of the amount of five million dollars ($ 5,000,000) as well as punitive damages, costs and attorney's fees.

**AS AND FOR COUNT SIX**
**TITLE C-2 ' 21-9.8(1) OF THE NASSAU COUNTY LOCAL LAWS**
**(NASSAU COUNTY HUMAN RIGHTS LAW)**

184.    The Plaintiff repeats, reiterates, and religious each allegation contained in paragraphs one through 183 of this Complaint with the same force and effect as though fully set forth herein. Defendant NHCC through its agent/employee, Defendant LaPLANTE and Defendant ACQUAVELLA discriminated and retaliated against Plaintiff, in her employment, based on Plaintiff's race/color, in violation of, inter alia, the Nassau County Human Rights Law.

185.    As a direct result of aforementioned acts, Plaintiff has been deprived of her rights, deprived of her freedoms and economically harmed. Plaintiff FORBES has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

186.    Defendant LaPLANTE and Defendant ACQUAVELLA subjected Plaintiff FORBES to harassment, humiliation, a hostile work environment, retaliation, and embarrassment due to her status as an Asian American/Indian woman and because she protested the wrongful treatment to which she was subjected by Defendants. As a result, Plaintiff has experienced a diminution in her quality of life.

43

187.    Specifically, Defendant LaPLANTE and Defendant ACQUAVELLA, with the approval, implicit or otherwise, of Defendant NHCC, subjected Plaintiff FORBES to racial enmity, which constitutes a hostile work environment when considered in the aggregate, in violation of the Nassau County Human Rights Law.  Defendant LaPLANTE also wrongfully terminated Plaintiff while she was on maternity leave,  and wrongfully terminated her on or about February 11, 2019 purportedly for taking sick days and for observing a religious holiday for which Plaintiff provided proper documentation. Defendant LaPLANTE and Defendant ACQUAVELLA's above mentioned collective actions  toward Plaintiff were in violation of the Nassau County Human Rights Law.

188.    Defendant LaPLANTE who had immediate authority over Plaintiff, was permitted by consent, implicit, explicit, or otherwise, of Defendant NHCC,  to create a hostile work environment by harassing, threatening, intentionally inflicting emotional distress, retaliating against and otherwise subjecting Plaintiff LaPLANTE to discriminatory treatment.

189.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, physiological detriment, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, and damage to her reputation as alleged in the preceding paragraphs of the within Complaint.

190.    As a result of  Defendants' unlawful and discriminatory actions, Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits.

191.    That by reason of the foregoing, Plaintiff FORBES has been subjected to pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience,  and frustration, and, thus, has been damaged in excess of three million ($5,000,000.00) dollars, as well as punitive damages, costs, and attorney's fees.

**PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a.   First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees;

b.   Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees;

c.   Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees;

d.   Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees;

e.   Fifth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees;

f.   Sixth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs, and attorney's fees;

g.   Attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and 42 U.S.C. § 2000e-5(k);

h.   A declaratory judgment stating that Defendants willfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

i.   Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

j.   An Order granting such other legal and equitable relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: Hempstead, New York
       April 5, 2021

                          LAW OFFICES OF
                          FREDERICK K. BREWINGTON

                   By: _____
                          FREDERICK K. BREWINGTON
                          Attorneys for Plaintiff
                          556 Peninsula Boulevard
                          Hempstead, New York  11550
                          (516) 489-6959

EXHIBIT A

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

RECEIVED

To: **Amisha Forbes**
**111 Heitz Place**
**Hicksville, NY 11801**

From: **New York District Office** JAN 1 5 2021
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**   LAW OFFICES OF
FREDERICK K. BREWINGTON

☐ *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2019-02370** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(929) 506-5316** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*        **Charging Party wishes to pursue matter in Federal District Court.**

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Judy A. Keenan* (signature)

January 5, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*

cc:

**NASSAU HEALTH CARE CORPORATION**
**Legal/B. Van Riper**
**2201 Hempstead Tpk.Box 6**
**East Meadow, NY 11554**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

NEW YORK NY 100
13 JAN 2021 PM 13

FIRST-CLASS





U.S POSTAGE ≫ PITNEY BOWES

ZIP 10004
02 4W
0000360941 AUG 13 2020

$ 000.50°

11550-542856

Frederick K. Brewington, Esq.
Attorney and Counselors at Law
556 Peninsula Blvd.
Hempstead, New York 11550